**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES ROBERT BAILEY,

    Defendant - Appellant.

No. 23-5044
(D.C. No. 4:20-CR-00188-CVE-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

This appeal arises from the complications caused by the Supreme Court's

recent decisions involving Indian Country reservation status in Oklahoma. *McGirt v.*

*Oklahoma*, 140 S. Ct. 2452 (2020).  Our recent decision in *United States v.*

*Pemberton*, 94 F.4th 1130 (10th Cir. 2024), effectively resolves the question

presented here: whether the good-faith exception to the Fourth Amendment's

exclusionary rule applies to searches conducted within Indian territory under

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

warrants issued by Oklahoma state court judges who mistakenly presumed that the location of the search was within state jurisdiction. We therefore affirm.

## I. Background

On May 13, 2020, the wife of James Bailey reported to Oklahoma state law enforcement that she had discovered nude photographs of her daughter on Mr. Bailey's cell phone. Aple. Br. at 2 (citing R. Vol. I at 79). Two days later, a Tulsa Police detective obtained a state warrant to seize Mr. Bailey's phone. *Id*. The detective executed the warrant on the same day and seized Mr. Bailey's cell phone, Aplt. Br. at 1 (citing R. Vol. I at 71), which contained at least nineteen sexually explicit images depicting Mr. Bailey sexually abusing his 14-year-old stepdaughter. R. Vol. 3 at 19; PSR at ¶ 6–7.

Subsequently, several months after *McGirt*, federal authorities indicted Mr. Bailey on multiple child sex offenses, including sexual abuse of a minor in Indian Country. Aple. Br. at 2-3 (citing R. Vol. I at 14, 65). Mr. Bailey moved to suppress the evidence, arguing that the search warrant was "improper" because "the court lacked subject matter jurisdiction" when it issued the warrant, and the detective was aware of Mr. Bailey's tribal affiliation before he obtained the warrant. Aple. Br. at 3 (citing Vol. 1 at 65). Although Mr. Bailey—an enrolled member of the Cherokee Nation—is not a member of the Creek Nation[1], the conduct for which Mr. Bailey was charged occurred within the Creek Nation "portion of Tulsa County." *See* Change of

---

[1] *See McGirt*, 140 S. Ct. at 2479 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").

Plea Hearing Transcript (DN 64) at 27:15–25 (confirming that the charged conduct occurred within the Creek Nation portion of Tulsa County).[2] As a result, the crime fell under federal jurisdiction because it happened in Creek Nation territory, regardless of Mr. Bailey's specific tribal affiliation.

The government countered that the detective had relied in good faith on a warrant issued by a neutral state magistrate judge.  Aple. Br. at 3 (citing Vol. 1 at 74–75); Aplt. Br. at 2-3 (citing *United States v. Leon*, 468 U.S. 897, 906 (1984)).  The district court agreed with the government, concluding that "the good-faith exception applie[d] to state-issued search warrants issued and executed pre-*McGirt* within tribal jurisdiction against property of Native Americans." Aple. Br. at 3 (citing R. Vol. I at 84).  Suppression, therefore, was not warranted.  Aplt. Br. at 3 (citing R. Vol. I at 76).

Mr. Bailey pleaded guilty to Coercion and Enticement of a Minor but reserved his right to appeal the denial of his motion to suppress.  Aple. Br. at 3 (citing R. Vol. I at 96).  The district court sentenced Mr. Bailey to ten years of imprisonment and imposed lifetime supervision with strict "Special Sex Offender Conditions."  Aple. Br. at 3 (citing R. Vol. I at 128–32).[3]

---

[2] This transcript was not included in the original record.  We therefore sua sponte supplement the appellate record with the transcript of Mr. Bailey's Change of Plea Hearing, which is in the district court record for Mr. Bailey's case. *United States v. James Robert Bailey*, No. 4:20-cr-00188-CVE (N.D. Okla).

[3]  Mr. Bailey challenged these conditions, along with the denial of his motion to suppress, in his initial direct appeal.  Aple. Br. at 3–4 (citing *United States of America v. James Robert Bailey*, No. 21-5085, (10th Cir. Aug. 2, 2022)

Following remand for resentencing, Mr. Bailey returns to this Court, seeking reversal of the denial of his motion to suppress. He challenges the application of the good-faith exception to the pre-*McGirt* search and seizure of his cell phone. Aple. Br. at 3 (citing Vol. I at 198).

## II. Discussion

### A.    *Standard of Review*

We review de novo the denial of a motion to suppress and the applicability of the *Leon* good-faith exception. *See, e.g.*, *United States v. Pemberton*, 94 F.4th 1130, 1136–40 (10th Cir. 2024).

### B.    *Legal Framework—Good faith*

We have concluded that courts should not exclude evidence as a remedy for a Fourth Amendment violation when an officer conducting "objectively reasonable law enforcement activity" relies in an "objectively reasonable manner" on others' mistakes. *See id.* at 1137 (internal citations omitted). So when a warrant is later found invalid because of a neutral magistrate judge's legal error, we generally presume that the executing officers acted in good faith reliance on the warrant's legal validity. *See id.* But this presumption fails when law enforcement officers' reliance on that search warrant is deemed "wholly unwarranted." *Id.* at 1138 (quoting *United*

---

(unpublished)). Both parties agreed, however, that the Special Sex Offender Conditions implicated Mr. Bailey's First Amendment rights and lacked necessary judicial determinations. So they jointly moved this Court to remand for resentencing. Aple. Br. at 4. This Court granted that motion and remanded the case for resentencing. *Id*.

*States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)). So evidence should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 348–49 (1987).

Therefore, the good-faith inquiry here is confined to the "objectively ascertainable question" of whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate judge's authorization. *Leon*, 468 U.S. at 923 n.23. The Supreme Court has already established that the exclusionary rule should not be applied to deter "objectively reasonable law enforcement activity." *id*. at 919. Objectively reasonable law enforcement activity encompasses situations "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate[.]" *Id*. at 920. At the same time, this principle encompasses "objectively reasonable reliance on a subsequently invalidated search warrant." *Id*. at 922. Thus, the sole question here is whether the Tulsa County detective "acted with an objectively reasonable good-faith belief" that obtaining a warrant from the state judge "was lawful." *Pemberton*, 94 F.4th at 1138 (brackets omitted).

### C.     *Application*

*Pemberton* answers this question. In *Pemberton*, we detailed the objective historical circumstances confronting law enforcement officers in McIntosh County, Oklahoma, as described by both the majority in *McGirt* and Chief Justice Roberts in dissent. 94 F.4th at 1135–38 (citing *McGirt*, 140 S. Ct. at 2464, 2496). Given that

5

established legal landscape and those prevailing practices, we rejected the conclusion that reasonably well-trained officers in McIntosh County, Oklahoma "could not have harbored an objectively reasonable belief" in either their lawful ability to obtain a warrant or the jurisdictional validity of the warrant. *Id*. at 1138 (citing *Leon*, 468 U.S. at 926).

We equally determined that the officers' decision to obtain and execute a state court warrant was an "objectively reasonable choice" given the "objective circumstances" confronting them. *Id*. *See also Leon*, 468 U.S. at 919 (obtaining search warrant from a neutral judge is an objectively reasonable law enforcement activity). "Because officers acted with an 'objectively reasonable good-faith belief' in their 'objectively reasonable law enforcement activity,'" they could "reasonably rely on the judge's authority to issue the warrant." *Id*. (quoting *Leon*, 468 U.S. at 919). We therefore concluded that the McIntosh County officers "acted with an objectively reasonable good-faith belief that their conduct was lawful." *Id*. (quoting *United States v. Workman*, 863 F.3d 1313, 1317 (10th Cir. 2017)). Since no other evidence showed deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, moreover, the deterrence rationale of the exclusionary rule did not apply. *Id*. 1139. Thus, we attributed the extra-jurisdictional search "solely" to the state court judge's (pre-*McGirt*) "legal error." *Id*. at 1137.

Those objective circumstances operate identically in Tulsa County, Oklahoma. Given the objective historical circumstances, legal landscape, and prevailing practices, we cannot conclude that the record establishes that a well-trained officer in

6

Tulsa County "'could not have harbored an objectively reasonable belief in [their] ability to seek a warrant, or "could not have harbored an objectively reasonable belief" in the warrant's jurisdictional validity.'" *Id.* at 1138 (quoting *Leon*, 468 U.S. at 926). Indeed, the Tulsa County detective's "choice to apply for a warrant issued by a state court judge"—which was grounded in the prevailing legal landscape and consistent with a state's traditional exercise of jurisdictional authority—was "objectively reasonable." *Id.* at 1138 (citation omitted). Therefore, the Tulsa County detective could "reasonably rely on the judge's authority to issue the warrant." *Id.* at 1138. Thus, we conclude that Tulsa County detective "acted with an objectively reasonable good-faith belief that [his] conduct was lawful," *id.* (citation omitted), justifying the application of the good-faith exception.

Resisting this conclusion, Mr. Bailey contends that the Tenth Circuit's decision in *Murphy v. Royal* should have clearly informed state law enforcement officers that Oklahoma lacked jurisdiction.[4] To be sure, the Tulsa County detective investigating Mr. Bailey obtained and executed a warrant to search Mr. Bailey's phone after this Court in *Murphy* announced its conclusion on the disestablishment question. But at the time the state court judge issued the warrant, the Supreme Court

---

[4] Aplt. Br. at 14 (citing *Murphy v. Royal*, 866 F.3d 1164, 1172 (10th Cir. 2017) (concluding that Congress had not disestablished the Muscogee (Creek) Nation's Reservation), *opinion amended and superseded on denial of rehearing en banc*, 875. F.3d 896 (Nov. 9, 2017).

had not yet issued its decision in *McGirt*—settling the legal uncertainty[5] over Indian country in the Creek Nation portion of Tulsa County.[6]  Prior to the Supreme Court's definitive decision in *McGirt*, therefore, we cannot conclude from the fact of *Murphy* alone that a reasonably well-trained *law enforcement officer* "would have known," *Leon*, 468 U.S. at 923 n.23, or "may properly be charged with knowledge," *Krull*, 480 U.S. at 348–49, that the warrant would be jurisdictionally invalid.  *See United States v. Herrera*, 444 F.3d 1238, 1253 n.16 (10th Cir. 2006) (noting that a reasonably well-trained officer is not required to "resolve unsettled law" or "anticipate future legal rulings.").[7]  Thus—following *Pemberton*—we attribute the search solely to the state court judge's (pre-*McGirt*) legal error and not to the Tulsa County detective's lack of good faith.

---

[5] *See* Ben Gibson, *Lessons from McGirt v. Oklahoma's Habeas Aftermath*, 99 Denv. L. Rev. 253 (2022) (documenting the surge in state and federal habeas petitions in Oklahoma following *Murphy*, but before *McGirt*, and discussing the legal ambiguity and procedural challenges faced, with records showing dismissals for various procedural reasons).

[6] In May 2018, the Supreme Court granted certiorari in *Murphy*.  584 U.S. 992 (2018).  In July 2020, on the day the Court decided *McGirt*, it affirmed *Murphy*. *Sharp v. Murphy*, 140 S. Ct. 2412 (2020).

[7] The Supreme Court ultimately concluded that Congress had not disestablished the Creek Nation Reservation and affirmed that the reservation's historical boundaries in eastern Oklahoma still constituted "Indian country," as defined under 18 U.S.C. § 1151(a).  *McGirt*, 140 S. Ct. 2452.

### III. Conclusion

In sum, the district court properly applied the good-faith exception to the evidence obtained in Mr. Bailey's case and did not err in denying Mr. Bailey's motion to suppress the evidence.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge